IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: *EX PARTE* APPLICATION OF )
DELTA ELECTRONICS, INC. )
PURSUANT TO 28 U.S.C. § 1782 TO ) C.A. No. 24-107-JLH-SRF
CONDUCT DISCOVERY FOR USE IN )
FOREIGN PROCEEDINGS )

## MEMORANDUM ORDER

At Wilmington this **10th** day of **January, 2025**, the court having considered the papers submitted and the arguments presented during the January 9, 2025 teleconference regarding: (1) the application of petitioner Delta Electronics, Inc. ("Delta") for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in a foreign proceeding (the "Application"), (D.I. 1) and the associated filings (D.I. 3; D.I. 4; D.I. 43; D.I. 47; D.I. 48); (2) Delta's motion to compel Vicor to reproduce any documents produced as Delta-Vicor-1782-0000704 to Delta-Vicor-1782-0006566 with the appropriate confidentiality designations, and (3) Delta's motion to treat employees of Delta affiliates as "Qualified Persons" under the protective order, IT IS ORDERED that the requests for relief are addressed as follows:

**1. Background.** On January 2, 2024, Delta filed an action for patent infringement against Vicor Corporation ("Vicor") in the People's Republic of China (the "China Proceeding"). (D.I. 4 at ¶ 6) In the China Proceeding, Delta alleges that certain Vicor products infringe Delta's China Patent No. CN 106571354 B (the "CN Patent"), which recites the method and technological process through which certain power source converters are manufactured. (*Id.* at ¶¶ 8-10) Delta filed a related proceeding for infringement of U.S. Patent No. 8,711,580 ("the '580 patent") against Vicor in this court on November 1, 2023 (the "U.S. Action"). (C.A. No.

23-1246-JLH, D.I. 1) Unlike the CN Patent, which relates to power source conversion, the '580 patent claims resonant conversion systems with over-current protection processes. (D.I. 3 at 2-3)

2. The Application, filed on January 26, 2024, seeks the production of thirty-nine categories of technical and financial documents. (D.I. 1, Ex. A at 9-14) Through the meet and confer process, Delta narrowed the scope of the Application to five categories of documents, subject to a stipulated protective order: (1) documents regarding the corporate relationship between Vicor Trading (Shanghai) Limited and Vicor; (2) documents regarding sales of Vicor's accused products; (3) documents regarding the location and controlling party of the manufacture, assembly, and sale of the accused products; (4) documents showing the volume of production and sales information for each accused product; and (5) documents regarding the technical specifications and descriptions of each accused product. (D.I. 47, Ex. 1; D.I. 29) However, Delta continued to define the term "Accused Product" to broadly include "all VICOR's power modules produced with its SM-ChiPs packaging," including not only the NBM series which are the primary products at issue, but also "any other product series using the SM-ChiPs package or substantially similar packaging[.]" (D.I. 47 at 1 n.1; Ex. 1 n.2) The five categories in Delta's narrowed requests for production are the subject of the parties' present dispute regarding Delta's Application.

3. **Legal standard.** Section 1782 of Title 28 provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made ... upon the application of any interested person[.]" 28 U.S.C. § 1782(a). The aim of the statute is to "facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership

position among world nations in this respect." *In re Bayer AG*, 146 F.3d 188, 191-92 (3d Cir. 1998).

   **4.** The court follows a two-step process to determine whether to grant judicial assistance under 28 U.S.C. § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). First, the court analyzes whether the statutory conditions of Section 1782 are satisfied. *Id.* at 263–64. Next, the court determines in its discretion whether the requested discovery should be allowed under the four factors identified by the Supreme Court in *Intel*:

> (1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; [and] (4) whether the subpoena contains unduly intrusive or burdensome requests.

*In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016) (citing *Intel*, 542 U.S. at 264–65). "*Intel* does not mandate that every factor support a court's exercise of discretion or that all factors need even be considered. Rather, it provided the factors to illuminate considerations relevant to the decision of whether to authorize assistance for use in proceedings before a foreign tribunal." *In re Eli Lilly & Co.*, 37 F.4th 160, 168 (4th Cir. 2022). The party opposing discovery has the burden of demonstrating any facts warranting denial of the Application. *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011).

   **5. Analysis.** Delta's narrowed Application seeks the production of five categories of documents from Vicor to use in the China Proceeding. Vicor maintains that the Application should be denied because Delta has not satisfied the statutory "for use" requirement under Section 1782, and the discretionary *Intel* factors weigh against granting the Application. The parties also dispute the confidentiality designations of two categories of documents produced by

Vicor, and Delta argues that the definition of "Qualified Persons" under the protective order should be expanded to include employees of Delta affiliates. The court addresses each argument in turn.

6. ***Delta's Section 1782 Application is DENIED without prejudice.*** Vicor contends that Delta's Application should be denied for two reasons. First, Vicor argues that Delta fails to satisfy the statutory requirement of showing that the requested discovery is "for use in a foreign proceeding before a foreign or international tribunal." (D.I. 47 at 1) Next, Vicor alleges that the discretionary *Intel* factors weigh against granting the Application. (*Id.* at 2-3) As set forth below, the court concludes that Delta has satisfied the statutory requirements under Section 1782, including the "for use" requirement. Nonetheless, the *Intel* factors support Vicor's position that Delta's Application should be denied.

### A. "For Use" Statutory Requirement

7. Vicor argues that Delta's Application should be denied because it has not satisfied the statutory requirement that the discovery is "for use in a proceeding before a foreign or international tribunal." (D.I. 47 at 1); 28 U.S.C. § 1782(a). To demonstrate that the material at issue is "for use" in a foreign proceeding, the petitioner must meet a "low threshold" by showing that "the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." *In re Selman*, C.A. No. 23-895-CJB, 2024 WL 1092025, at *3 (D. Del. Mar. 13, 2024) (quoting *In re Ex Parte Application of Eni S.p.A.*, C.A. No. 20-mc-334-MN, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021)). "The key question . . . is not simply whether the information sought is relevant, but whether the [petitioner] will actually be able to use the information in the [foreign] proceeding." *Id.* (quoting *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015)).

4

8. Vicor contends that the material sought in Delta's narrowed requests is not relevant because Delta already has the necessary information from its physical examinations and tear downs of the accused products. (D.I. 47 at 1) But this argument is directed to the cumulative nature of the requested discovery, as opposed to its relevance. Delta has indicated that the requested discovery will provide additional details not readily discernable from an examination of the physical products. (D.I. 48, Ex. 4 at ¶ 7) This is sufficient to satisfy Delta's *de minimis* burden of showing that the documents "will be employed with some advantage or serve some use in the proceeding." *In re Selman*, 2024 WL 1092025, at *3, 6.

### B. *Intel* Factors

9. Although the statutory "for use" requirement is met, the court finds, on balance, the discretionary *Intel* factors weigh against granting the Application. The first *Intel* factor, which asks whether the evidence sought is obtainable without invoking Section 1782, weighs heavily against Delta because Vicor is a party to the China Proceeding. *See Intel*, 542 U.S. at 264 (explaining that "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."). The declarations submitted by Vicor support a conclusion that Chinese courts have the power to require a party to produce relevant evidence. (D.I. 47, Ex. 5 at ¶¶ 4-9) Because Vicor is a party to the China Proceeding, it is subject to the jurisdiction of the Chinese court, which may order Vicor "to produce whatever evidence their laws require." *In re Nokia Techs. Oy*, C.A. No. 23-1395-GBW, 2024 WL 1675025, at *3 (D. Del. Apr. 18, 2024) (citing *Via Vadis Controlling GmbH v. Skype, Inc.*, C.A. No. 12-mc-193-RGA, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013)); *see also In re Application of Gilead Pharmasset LLC*, C.A. No. 14-mc-243-GMS, 2015 WL 1903957, at *2-3 (D. Del. Apr. 14, 2015)

5

(finding first factor weight against granting the § 1782 application where the respondent was a defendant in all four foreign proceedings).

**10.** During the hearing on this dispute, counsel for Delta focused on an unpublished order from this district granting a Section 1782 application in a case where the respondent was a party to the foreign proceeding. *See Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co. LLC*, C.A. No. 08-mc-135-GMS, D.I. 2 (D. Del. July 18, 2008). This order contains no analysis and gives no indication that the *Intel* factors were considered. *Id.* As discussed in the preceding paragraph, more recent authority from this district supports Vicor's position that the first *Intel* factor weighs against granting a Section 1782 proceeding when the respondent is a party to the foreign proceeding. In addition, the Third Circuit recently held that the first *Intel* factor weighed against granting a Section 1782 application where the discovery sought was "in the possession of a party subject to the [foreign] courts' jurisdiction, so it is obtainable there without § 1782(a) aid." *SPS Corp I, Fundo de Investimento em Direitos Creditrios Nao Padronizados v. Gen. Motors Co.*, 110 F.4th 586, 592 (3d Cir. 2024). Case authority from other jurisdictions is consistent with this approach. *See, e.g., Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (citing cases and holding that, "when the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition[.]"); *In re Hranov*, 2024 WL 2193866, at *7 (S.D.N.Y. May 15, 2024) (finding first *Intel* factor weighed heavily against the petitioner, even though subpoena was nominally directed to an affiliate of the respondent, where the respondent was a party to the foreign proceeding and could obtain the documents).

**11.** The second *Intel* factor is neutral. The relevant inquiry under the second factor is whether the foreign court is receptive to U.S. federal court assistance, regardless of whether the

evidence would be admissible in the foreign court. *In re O'Keefe*, 646 F. App'x at 267. Although Delta submits a declaration stating that the Chinese tribunal will be receptive to the requested discovery and cites case authority granting relief under Section 1782 for proceedings in China, it is not clear on this record that the same result would hold in this case.[1] (D.I. 48 at 2; D.I. 4 at ¶¶ 20-29) Vicor indicates Delta represented to the Chinese court that it can establish infringement based on its inspection of the accused products, without the need for additional discovery. (D.I. 47, Ex. 3 at ¶¶ 7-8) During the January 9 teleconference, Delta did not deny that it believed it could establish infringement in the China Proceeding based on the discovery it already obtained. (1/9/2025 Tr.) The Chinese court may be less amenable to permitting foreign discovery it views as redundant or cumulative.

12. The third *Intel* factor, which considers whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies," weighs against Delta. *Intel*, 542 U.S. at 265. Although the petitioner need not exhaust all potential discovery procedures in the foreign proceedings to obtain a federal court's assistance under Section 1782, "a perception that an applicant has 'side-stepped' less-than-favorable discovery procedures in the foreign proceedings" to obtain assistance under Section 1782 "can be a factor in a court's analysis." *In re Selman*, 2024 WL 1092025, at *8 (quoting *In re Application of Gilead Pharmasset LLC*, C.A. No. 14-mc-243-GMS, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015)). Vicor has shown that there are mechanisms available to Delta in the China Proceeding that would allow it to obtain the

---

[1] In support of its argument, Delta cites two cases in which relief under Section 1782 was granted for litigation in China where the second *Intel* factor was satisfied. *See In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*, 2016 WL 6804600, at *3 (N.D. Cal. Nov. 17, 2016) (finding second *Intel* factor weighed in the petitioner's favor where there was no evidence suggesting the Chinese tribunal would be unreceptive to the discovery requests); *In re Align Tech., Inc.*, 2022 WL 18460717, at *5 (C.D. Cal. Dec. 15, 2022) (accepting attestation of petitioners' counsel that the Chinese court would accept evidence obtained through Section 1782 proceedings in the United States).

requested discovery without invoking Section 1782, yet Delta has not attempted to obtain this discovery through the Chinese court. (D.I. 47, Ex. 5 at ¶¶ 4-10; D.I. 48 at 2)

13. The crux of the issue regarding the third *Intel* factor is not whether Delta exhausted all efforts to obtain discovery in the foreign jurisdiction. The failure to exhaust discovery efforts in the foreign tribunal is not, by itself, fatal to the Application. *See SPS Corp I*, 110 F.4th at 592-93; *In re Selman*, 2024 WL 1092025, at *8. Here, however, Delta affirmatively represented in the foreign litigation that it had all the discovery it needed for its infringement case. (D.I. 47, Ex. 3 at ¶ 7) Delta's resort to a broad Section 1782 application while representing to the Chinese court that it can demonstrate infringement based on the physical product inspection supports a conclusion that Delta wished to circumvent foreign proof-gathering procedures. *See In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at *12 (D.N.J. Jan. 10, 2019) (concluding that a "preemptive approach" to filing a § 1782 petition "is not barred by the statute, but it does cut against the goals of comity and efficiency.").

14. The fourth and final *Intel* factor, regarding "whether the discovery sought is unduly intrusive or burdensome," weighs against Delta. *Intel*, 542 U.S. at 265. This analysis "is virtually identical to the familiar 'overly burdensome' analysis that is integral" to the analysis under Rule 26 of the Federal Rules of Civil Procedure. *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016). On this record, Delta has not shown how the evidence obtained through its physical examination of the accused products and Vicor's technical document production is not enough to prove infringement. Consequently, Vicor's production of the requested documents would likely be cumulative and disproportionate to the needs of the case.

15. Delta asserts that the five categories of documents are relevant without specifying what evidentiary gaps need to be filled in its infringement analysis, stating only that its "analysis has limits compared to information that can be revealed through the requested discovery." (D.I. 48 at 3) The accompanying declaration of Jin Liang states that the requested documents and files "provide[ ] additional information" and "details" about the components of the accused products without explaining how those details are necessary to prove infringement. (D.I. 48, Ex. 4 at ¶ 7) The declaration also states that the accused products are "difficult to disassemble" without affirmatively representing that Delta was unable to successfully disassemble them. (*Id.*) Delta fails to explain with specificity how certain requested technical documents would provide information beyond the information obtained from the accused product tear downs and/or Vicor's technical document production, nor does it describe why those additional details are relevant to the infringement analysis. *See In re Selman*, 2024 WL 1092025, at *3 (stating that "Petitioners made this task much more difficult than it had to be" by providing the court with little information about the substance of the foreign proceeding).

16. In the Liang declaration and during the January 9 teleconference, Delta explained that the production of Gerber files showing each layer of the printed circuit boards would provide "additional information about the electrical coupling relationship between electronic components in the Accused Products." (D.I. 48, Ex. 4 at ¶ 7(b)) Delta stated that this information is relevant to certain claims in the CN Patent because it shows how "the first terminal of the first connection part is electrically coupled to the upper surface of the carrier" in the accused products. (*Id.*) However, Delta does not suggest that the electrical couplings in the accused products were not apparent from the physical product inspection. As a result, it is not

9

clear what "additional details" about the electrical couplings are likely to be found in the Gerber files.

**17.** Delta also requests the production of computer aided design files ("CAD files") to "more directly determine the mounting positions of various electronic components of the Accused Products" and "the shape and internal dimensions of the molding or resin molds for the Accused Products." (D.I. 48, Ex. 4 at ¶ 7(c)-(d)) Delta maintains that this information was "very difficult to discern" from the physical inspection of the accused products because of their intricate design and the difficulty of disassembling them. (*Id.*) As with the Gerber files, Delta stops short of representing that it could not determine the mounting positions of the electronic components from its physical inspection of the accused products or that it was unable to disassemble the accused products. Arguing that more information would be helpful is not enough to compel the production of Vicor's CAD files that provide details of manufacturing methods and product tolerances which Vicor contends are akin to source code.[2] Absent a clear articulation of how the requested discovery is relevant to the infringement claims in the foreign proceeding and not cumulative of information already gleaned from Delta's physical examination of the accused products and Vicor's production of schematics and other technical documents, Delta's requests are unduly burdensome.

**18.** Delta also fails to explain how certain types of technical documents it seeks are relevant to the infringement claims asserted in the foreign proceeding. Delta seeks the production of thermal simulation diagrams to "provide additional information about where and

---

[2] To the extent that Delta argues the CAD files show details of manufacturing methods, Vicor contends that there are no method claims at issue in the foreign proceeding because the accused products are manufactured in the United States. (D.I. 47 at 1, 3; Ex. 3 at ¶¶ 6-7; Ex. 4 at ¶ 7) Delta does not refute Vicor's representation that the method of manufacture is not relevant to the claims in the foreign proceeding.

how a circuit board will heat up during operation." (D.I. 48, Ex. 4 at ¶ 7(e))  According to Delta, this information was not accessible through its physical inspection. (*Id.*)  But Delta does not explain how this information is relevant to the infringement analysis, beyond generally stating that the claim language deals with "conductive materials." (1/9/2025 Tr.)

19. Finally, Delta requests documents to show revisions of the accused products that "will provide information about the development process of the Accused Products" and "clarify when the alleged infringement began and how it progressed over time." (D.I. 48, Ex. 4 at ¶ 7(a))  Delta offers no explanation of why this information is needed to prove infringement in the China Proceeding.

20. In support of its Application, Delta cites a line of cases addressing the production of core technical documents without explaining how these cases apply in the context of an application under Section 1782. (D.I. 48 at 3) (citing *Orca Sec. Ltd. v. Wiz, Inc.*, C.A. No. 23-758-JLH-SRF, D.I. 62 (D. Del. May 17, 2024); *Novanta Corp. v. Iradion Laser, Inc.*, C.A. No. 15-1033-SLR-SRF, 2016 WL 4987110, at *3 (D. Del. Sept. 16, 2016); *FriendiAI Inc. v. Hugging Face, Inc.*, C.A. No. 23-816-MN-SRF, D.I. 62 (D. Del. June 10, 2024); *Collabo Innovations Inc. v. Omnivision Techs.*, C.A. No. 16-197-JFB-SRF, D.I. 250 (D. Del. Aug. 6, 2018)).  There is no "bright-line rule that a court can never order production of source code" or other sensitive material in response to a Section 1782 application. *CPC Patent Techs. PTY Ltd. v. Apple, Inc.*, 2023 WL 3579314, at *4 (N.D. Cal. Jan. 3, 2023).  However, persuasive authority from this district recognizes the heavy burden of producing source code level material in response to a Section 1782 application. *See Via Vadis Controlling GmbH v. Skype, Inc.*, C.A. No. 12-mc-193-RGA, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013) (holding that the fourth *Intel* factor weighed against granting the discovery request seeking the production of "the most sensitive and

11

confidential property of Respondents."). Vicor has already produced a volume of core technical documents relating to the accused products, and Delta has not sufficiently demonstrated how these documents and the information gleaned from the physical inspection of the accused products are insufficient to prove its infringement claims in the foreign proceeding.

21. To the extent that Delta seeks the production of additional sales information through its Application, Delta acknowledges that Vicor already produced sales data and states only that "[i]t remains unclear whether Vicor has fully responded to Delta's request and has produced the requested sales data[.]" (D.I. 48 at 3) Delta's speculation that Vicor's production of sales information was incomplete is insufficient to sustain its request for relief under Section 1782. As stated on the record during the January 9 teleconference, this issue is not ripe for the court's review because it was raised in Delta's responsive letter submission, denying Vicor a formal opportunity to respond to Delta's argument. (1/9/2025 Tr.)

22. ***Delta's motion to compel the re-designation of Delta-Vicor-1782-0000152-157 and Delta-Vicor-1782-0000704 to Delta-Vicor-1782-0006566 is GRANTED-IN-PART.*** Delta also moves to compel Vicor to reproduce any documents produced as Delta-Vicor-1782-0000152-157 (a contract services agreement) and Delta-Vicor-1782-0000704 to Delta-Vicor-1782-0006566 (datasheets for Vicor products) with the appropriate confidentiality designations. (D.I. 47 at 4; D.I. 48 at 4) After some discussion of the contract services agreement during the teleconference on January 9, Delta indicated it believed the issue could be resolved between the parties and a redacted version will be produced. Consequently, Delta's motion to compel the re-designation of Delta-Vicor-1782-0000152-157 is DENIED without prejudice.

23. Delta also contends that some of the 260 datasheets produced by Vicor are publicly available and should be de-designated. (D.I. 48 at 4) A review of the exhibits and corresponding

12

links on Vicor's website confirms that four datasheets identified in Delta's letter submission are publicly available. (D.I. 48, Exs. 8-11) Accordingly, Delta's motion is GRANTED with respect to those four datasheets. On or before January 17, 2025, Vicor shall remove the Attorneys' Eyes Only designation for these four datasheets and substitute appropriate designations consistent with the parties' protective order.

**24.** Delta's motion is DENIED without prejudice with respect to the remaining datasheets at Delta-Vicor-1782-0000704 to Delta-Vicor-1782-0006566, based on Vicor's representation that it has re-reviewed the 260 total datasheets produced and has confirmed that only the four datasheets identified by Delta are publicly available. The blanket relief sought by Delta to de-designate all 260 datasheets based on the public availability of only four of those datasheets does not advance either side's interests where, as here, only some of those datasheets relate to the NBM series products identified by Delta as "[t]he primary products at issue." (D.I. 48 at 1 n.1)

**25. *Delta's request to treat employees of Delta affiliates as "Qualified Persons" under the Protective Order is DENIED without prejudice.*** The parties negotiated a stipulated protective order which was entered by the court on July 8, 2024.[3] (D.I. 29) The definition of "Qualified Persons" in the protective order does not encompass employees of Delta affiliates. (*Id.* at 2) Delta first requested to expand the definition of "Qualified Persons" in November of 2024, without explaining why the scope of the term should be modified only a few months after the protective order was entered or identifying a specific individual to be included in the definition. (D.I. 48, Ex. 3 at 6) On this record, there is no basis to disrupt the terms of the

---

[3] During the teleconference on January 9, Vicor expressed concern that Delta had failed to comply with the terms of the protective order by sharing designated information with certain individuals before notifying Vicor. (1/9/2025 Tr.) This issue is not ripe for resolution by the court.

13

negotiated protective order. Accordingly, the parties shall meet and confer and go through the process outlined under the protective order for adding an individual as a "Qualified Person."

26. ***Vicor's request to stay this proceeding is DENIED as moot.*** Vicor alternatively moves for a stay of this action if the court does not deny Delta's Application. Because the court has denied Delta's Application, Vicor's motion to stay is moot.

27. **Conclusion.** For the foregoing reasons, IT IS ORDERED that:

   A. Delta's application for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in a foreign proceeding is DENIED. (D.I. 1; D.I. 43)

   B. Delta's motion to compel the re-designation of Delta-Vicor-1782-0000152-157 and Delta-Vicor-1782-0000704 to Delta-Vicor-1782-0006566 is GRANTED-IN-PART. On or before January 17, 2025, Vicor shall reproduce the four datasheets at Delta-Vicor-1782-0000704 to Delta-Vicor-1782-0006566 that Vicor concedes are publicly available. The motion is DENIED without prejudice in all other respects.

   C. Delta's request to treat employees of Delta affiliates as "Qualified Persons" under the Protective Order is DENIED without prejudice.

28. Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **January 17, 2025**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re*

14

*Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

29. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

30. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge

15